**Ray BOHN, Commissioner, Department of Labor and Industry, State of Minnesota, Relator,**

v.

**NORTHWEST AIRLINES, INC., Respondent.**

**No. C1–88–2020.**

Court of Appeals of Minnesota.

Feb. 14, 1989.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey Baker, Sp. Asst. Atty. Gen., St. Paul, for relator.

Melissa J. Draper, Minneapolis, for respondent.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and MULALLY, JJ.

## OPINION

EDWARD D. MULALLY, Judge.[*]

Upon a writ of certiorari, the Commissioner of the Minnesota Department of La-

bor and Industry (the Commissioner), seeks review of the decision of the Minnesota Occupational Safety and Health Review Board (the Board). The Commissioner had cited respondent Northwest Airlines, Inc. (Northwest) for an alleged violation of a Minnesota occupational safety and health (OSH) standard because Northwest required its employees to wear safety shoes but did not then provide such shoes to its employees at company expense. An administrative law judge (ALJ) appointed by the Board ruled by summary judgment that the Commissioner had correctly cited Northwest for violation of the Minnesota OSH standard. Northwest appealed the ALJ's decision to the Board and the Board reversed, concluding that there was no OSH standard requiring employees to wear safety shoes and that, therefore, Northwest was not required to provide such safety shoes at its own cost.

## FACTS

In 1986, Northwest implemented a company policy requiring its employees in various departments to wear steel-toed, skid resistant safety footwear. The employees were required to provide the footwear entirely at their own expense.

Acting upon an employee complaint, a Commissioner's representative conducted an investigation and verified that Northwest indeed was requiring employees to pay for their safety shoes. The Commissioner issued a non-serious violation citation to Northwest alleging that Northwest's requiring its employees to wear safety shoes, but not then paying for the shoes, violated Minn.Stat. § 182.655, subd. 10a (1986). The Commissioner did not, however, make a particularized finding that Northwest's employees should wear safety shoes because of any specific occupational hazards at Northwest's facility. The citation was instead based solely on Northwest's own company policy requiring safety shoes.

After Northwest notified him that it would contest the citation, the Commission-

---

[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

er issued a summons and complaint pursuant to the rules adopted by the Board for hearing contested citation cases. In its answer, Northwest denied that it violated any law by its safety shoe policy.

The Commissioner moved for summary judgment, arguing that Northwest's safety shoe policy was an undisputed fact and that such policy constituted a violation of law. Northwest neither admitted nor denied that its activities constituted a violation of section 182.655, subd. 10a. Instead, in its memorandum in opposition to summary judgment, Northwest made the sole argument that Federal Aviation Administration regulations preempted all state occupational safety and health standards for airline workers and that, therefore, the Commissioner had no jurisdiction to cite Northwest for any violations. Northwest did not address the Commissioner's substantive claim that Northwest's safety shoe policy violated state law.

The ALJ assigned by the Board to hear the dispute determined that federal law did not preempt Minnesota OSH law and that the Commissioner had jurisdiction to issue the citation. The ALJ further determined that the Commissioner properly cited Northwest for violation of state law by its safety shoe policy. In an attached memorandum, the ALJ stated:

> The respondent [Northwest] does not dispute that it has a policy requiring that its employees pay the full cost of safety shoes required under the occupational safety and health standards of this state, or that some employees have in fact purchased shoes pursuant to that policy. On the contrary, the respondent's only objection to the complainant's motion for summary judgment is that it is not covered by Minn.Stat. § 182.655, subd. 10a, because the Federal Aviation Administration has promulgated regulations (which preempt state law in this area).

Northwest appealed the ALJ's decision to the Board, claiming the ALJ erred in determining that federal law did not preempt Minnesota OSH standards and that, even if there were no preemption, the ALJ erred in determining Northwest's

safety shoe policy violated Minn.Stat. § 182.655, subd. 10a. In response, the Commissioner argued the Board was limited to deciding only the preemption issue because Northwest had not raised the substantive law issue in the proceeding before the ALJ.

The Board affirmed the ALJ's determination on the preemption issue, but reversed that portion of the ALJ's decision finding Northwest's policy was in violation of state law. As to the Commissioner's claim that the Board could not hear the substantive law issue for the first time on appeal, the Board stated that it could in fact hear this issue because Northwest had no opportunity to present its arguments at a formal hearing before the ALJ and because the Commissioner had not shown that he would suffer substantial harm if the Board considered the issue for the first time on appeal. The Board's reversing the ALJ's decision resulted in an effective vacation of the Commissioner's citation of Northwest. Upon a writ of certiorari to this court, the Commissioner claims the Board erred by (1) considering for the first time on appeal the issue of whether Northwest violated any Minnesota OSH standard, and (2) determining that Northwest was not in violation of Minn.Stat. § 182.655, subd. 10a. Northwest has not challenged that portion of the Board's decision determining that federal law does not preempt state law in this area.

## ISSUES

1. Did the Board err in considering an issue not previously raised before the ALJ?

2. Did the Board err in ruling Northwest was not required to pay for its employees' safety shoes where the safety shoes were required by company policy but not by state or federal law?

## ANALYSIS

Pursuant to statute, the Board may conduct hearings or it may delegate that function to an ALJ whom it appoints. Minn.Stat. § 182.664, subd. 3 (1986). When an ALJ conducts the hearing, an aggrieved party may appeal the ALJ's decision to the Board, which may in turn "revise, confirm

or reverse the findings and decision of [the ALJ]." *Id.*, subd. 5 (1986). Under most circumstances the Board is limited in its review "to the matters preserved in the record." Minn.R. 5215.5200, subpt. 3 (1987). "[F]or good cause shown," however, the Board may on its own motion waive this and any other rule, and thus hear a matter for the first time on appeal; and it may accordingly make "any order as justice or administration of the occupational safety and health act [of 1973] requires." Minn.R. 5215.6000 (1987).

■ Although it did not expressly state it was waiving any of its rules, the Board did state that it believed the rule (limiting review) should not be used in an "excessively formal manner so as to work an injustice." The Board noted first that Northwest had had no opportunity to present its arguments at a formal hearing in front of the ALJ because the matter was decided entirely on the briefs. Secondly, it determined that the Commissioner had not shown he would suffer substantial harm if the board considered the issue for the first time on appeal. Therefore, we conclude there was sufficient "good cause shown," *id.*, for the Board to waive its rules and so consider the issue for the first time on appeal.

■ 2. Section 182.655, subd. 10a, which Northwest is charged with violating, provides, in pertinent part:

> Where appropriate, standards shall prescribe suitable protective equipment, if feasible engineering and administrative methods of protection alone do not provide adequate protection, and this equipment shall be made available by and at the cost of the employer.

Subdivision 10a thus simply provides that *if* there is a standard prescribing safety equipment, then the employer must pay for the equipment. Northwest correctly points out that the term "standards," as set forth in subdivision 10a, is the same "standards," set forth in subdivision 1 of section 182.655, which, to be effective, must be adopted pursuant to the procedures set forth in that section. Northwest then correctly argues that there is no such adopted "standard"

which prescribes safety shoes for Northwest's or any other airline's employees. Nowhere in the Minnesota OSH standards is there a requirement for safety shoes, nor is there a safety shoe requirement in federal OSHA standards, which standards are incorporated by reference into Minnesota OSH rules. *See* Minn.R. 5205.0010 (1987).

The only "standard" requiring safety shoes is Northwest's own company policy. Therefore, because Northwest is not required by law to provide the safety shoes, it is not required to pay for those safety shoes.

The Commissioner asserts that Minnesota OSH law, being remedial in nature, should be liberally construed to protect employees' on-the-job safety. The Commissioner argues the Board's decision forces Northwest's employees to bear the cost of their own personal protective equipment simply because Northwest, and not the Commissioner, determined the protective equipment was necessary. The Commissioner claims that to draw such a fine distinction is to ignore the employer's primary obligation to provide for workers' safety.

The clear statutory language, however, requires employers to pay for such safety equipment only where Minnesota OSH standards require employees to wear that equipment. There is no requirement that employers must pay for safety equipment which the employer, and not the Commissioner, determines is necessary. In that respect, Northwest's argument is well taken that to require an employer to pay for all safety equipment it requires under its own internal policies, which equipment is not required by state or federal law, would effectively discourage employers from voluntarily implementing safety policies beyond those expressly mandated by law.

Although the remedial intent of legislation may be considered, the clear language of a statute cannot be disregarded in the name of pursuing the spirit rather than the letter of the law. Minn.Stat. § 645.16 (1986). The Commissioner's liberal construction argument is thus unconvincing because we would have to disregard the clear language of the statute to give it the

construction the Commissioner advocates. The Commissioner essentially would have the term "standards," as set forth in subdivision 10a, mean all safety requirements, whether prescribed by law or required by the employer. The term "standards," however, as set forth in every other subdivision of section 182.655, clearly refers to those requirements adopted by the Commissioner and not those implemented by employers.

## DECISION

The decision of the Minnesota Occupational Safety and Health Review Board reversing the ALJ's decision, and thus vacating the Commissioner's safety violation citation, is affirmed.

AFFIRMED.